United States District Court
Middle District of Florida
Jacksonville Division

**In Admiralty**

FINCANTIERI MARINE REPAIR LLC,

   *Plaintiff,*

V.            **NO. 3:22-cv-410-TJC-PDB**

M/V *GEYSIR*, HER ENGINES, TACKLE, ETC.,

   *Defendant.*

---

## Report & Recommendation

Before the Court in this action in rem are two motions by the plaintiff, Fincantieri Marine Repair LLC ("FMR"), with no response from the defendant, the M/V *Geysir*, her engines, tackle, etc. The first motion is for default judgment. Doc. 24. The second motion is for an interlocutory sale of the M/V *Geysir*. Doc. 39. This is the M/V *Geysir*:



Doc. 37-1 at 2.

## I.      Complaint

In a complaint filed on April 11, 2022, and verified by FMR's vice president, Shawn Johnston, FMR states:

> 1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.[1]
>
> 2. This is an in rem action pursuant to Supplemental Rule C and Local Admiralty Rules 7.01, 7.02, 7.03 and 7.05.[2]
>
> 3. At all material times, Plaintiff FMR was a company operating a maritime shipyard, drydock and repair business in Jacksonville, Florida.
>
> 4. The GEYSIR is, and will be during the pendency of the process, within this district, and within the jurisdiction of this Court, and is currently located at 2600 East Adams Street, Jacksonville, FL, 32202.
>
> 5. On or about January 1, 2022 through the present date, FMR, on order of the owner of the GEYSIR, provided berthing services to the GEYSIR since January 1, 2022, and continues to provide such berthing services

---

[1]Rule 9(h) provides, "If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated."

[2]The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions apply to actions in rem. Supp. Rule A(1)(A)(ii). In particular, Supplemental Rule C states special provisions for actions in rem, and Supplemental Rule E states general provisions for actions in rem. "The Federal Rules of Civil Procedure also apply to the … proceedings except to the extent that they are inconsistent with the[] Supplemental Rules." Supp. Rule A(2). "To supplement and clarify" the rules, this Court's Admiralty and Maritime Practice Manual "governs admiralty and maritime practice in the Middle District." Local Rule 1.03(a).

Because this is an action in rem, these rules and the manual govern. The Local Rules cited in the complaint—Local Rules 7.01, 7.02, 7.03, and 7.05—are no longer in the Local Rules, but their substance is in the manual at sections 1, 2, 3, and 5.

at present. The invoices for this service through March 31, 2022 are attached hereto as Exhibit "A".

6. The services furnished by FMR to the GEYSIR create a maritime lien for FMR and against the GESYIR in the amount of $122,425.00. Additionally, the berthing costs continue at a rate of $1,475.00 per day.

7. FMR has demanded of the owner of the GEYSIR payment for its services in the amount of $122,425.00. Although duly demanded, the charges have not been paid and the amount remains due and owing to FMR.

8. Pursuant to Local Rule 7.05(a), FMR is owed $122,425.00 pursuant to the invoices attached to the Complaint. Unliquidated claims, including costs, have not been determined to date but are less than $5,000.00 at this time, including the US Marshal's deposit fee of $2,500.00.

Doc. 1 ¶¶ 1–8 (underlining omitted).[3]

In the complaint, FMR demands "[t]hat process in due form of law according to the rules and practice of this Court in causes of maritime and admiralty jurisdiction may issue against the M/V GEYSIR, her engines, tackle, apparel, etc., citing all persons claiming any interest to appear and answer on oath all, and singular, the matters stated above." *Id.* at 3. FMR also demands "[t]hat the Court issue a warrant to the U.S. Marshal for arrest of the M/V GEYSIR subject to governing custodial regulations." *Id.* FMR further demands "[t]hat this Court order and adjudge that the M/V GEYSIR be condemned and

---

[3]"In an action in rem the complaint must: (a) be verified; (b) describe with reasonable particularity the property that is the subject of the action; and (c) state that the property is within the district or will be within the district while the action is pending." Supp. Rule C(2). Verification must be "by a party or an officer of a corporate party." Manual § 1(c). "[T]he complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Supp. Rule E(2)(a). "Every complaint in a Supplemental Rule … C action must state the amount of the debt, damages, or salvage. The complaint must also specify the amount of any unliquidated claims, including attorney's fees." Manual § 5(a). FMR satisfies these requirements. *See generally* Doc. 1.

sold to pay the amount due the Plaintiff ... as aforesaid together with prejudgment interest and costs, as well as any other relief the Court may deem just and proper." *Id.*

To the complaint, FMR attaches a letter dated February 1, 2022, from Mr. Johnston to four people (Percy Pyne, Colleen Robertson, Shawn Baptiste, and Manny Little), explaining, "Enclosed for payment is our invoice number 30101 for the M/V Geysir Wharfage Fee at Commodores Point in the amount of $35,400, which covers the period of 1/7/2022 through 1/31/2021 [sic] for services rendered." Doc. 1-1 at 2. FMR continues, "As a new customer, we provided your team with a 7-day grace period before commencing the wharfage fees. I would like to reiterate that MV Geysir is on a net 7 term policy. This means that invoices are due within 7 days of receipt." *Id.* at 2. The invoice is to "Green Shipping Line" at P.O. Box 6577, Fair Haven, New Jersey, and shows wharfage fees of $35,400.00 for January 2022, with $0.00 in taxes. *Id.* at 3–4.

FMR also attaches a letter dated April 8, 2022, from Mr. Johnston to the same four people, explaining, "Enclosed for payment is our invoice number 30123 for the M/V Geysir Wharfage Fee at Commodores Point in the amount of $87,025, which covers the period of 2/1/2022 through 3/31/2022 for services rendered." *Id.* at 5. FMR adds, "Additionally, beginning the next billing cycle, FMR will commence with charging a storage fee for Owner's Material at a rate of $1.50/sq. ft./month for inside storage and $0.50/sq. ft./month for outside storage." Doc. 1-1 at 5. The invoice also is to "Green Shipping Line" at the address described and shows wharfage fees of $41,300.00 for February 2022 and $45,725.00 for March 2022, with $0.00 in taxes. *Id.* at 7.

## II.    Procedural History

Ruling on a motion by FMR, Doc. 2, the undersigned directed the clerk to issue a warrant for the arrest of the M/V *Geysir*,[4] Doc. 9. The clerk issued the warrant and delivered the warrant to the marshal for service.[5] Doc. 11. The marshal arrested the M/V *Geysir* in Jacksonville on May 6, 2022.[6] *See* Doc. 12.

Ruling on another motion by FMR and considering FMR's representation it "is prepared to provide security, berthing and routine services for the safe-keeping of the vessel at a cost less than that presently charged by the U.S. Marshal," Docs. 3, 5, the undersigned appointed FMR to serve as the substitute custodian of the M/V *Geysir*, Doc. 10.[7] In that role, FMR moved the M/V *Geysir*

---

[4]In an action in rem, "[t]he court must review the complaint and any supporting papers. If the conditions for an in rem action appear to exist, the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property that is the subject of the action." Supp. Rule C(3)(a)(i); *accord* Manual § 3(a)(1)(A). The undersigned reviewed the complaint and its exhibits, and because the conditions for an action in rem appeared to exist, directed issuance of the warrant. Doc. 9.

[5]"The plaintiff must prepare and file the warrant of arrest or summons. The warrant of arrest must substantially conform to MDF 703 and must give adequate notice of the post-arrest provisions of Section 3(f)." Manual § 3(a)(2). "If the property that is the subject of the action is a vessel or tangible property on board a vessel, the warrant and any supplemental process must be delivered to the marshal for service." Supp. Rule C(3)(b)(i). The clerk issued a warrant in the form of MDF 703. Doc. 11. The warrant included the required notice. Doc. 11 at 2.

[6]"If tangible property is to be … arrested, the marshal or other person or organization having the warrant shall take it into the marshal's possession for safe custody." Supp. Rule E(4)(b). "If the character or situation of the property is such that the taking of actual possession is impracticable, the marshal or other person executing the process shall affix a copy thereof to the property in a conspicuous place and leave a copy of the complaint and process with the person having possession or the person's agent." *Id.* Because taking possession of the M/V *Geysir* was impracticable, the marshal presumably affixed the warrant to the M/V *Geysir*.

[7]"Any motion to appoint a substitute custodian or facility must include, as an exhibit to the motion, a consent and indemnification agreement signed by both the filing party, or the party's attorney, and the proposed substitute custodian." Manual § 5(k)(3)(B). "The consent and indemnification agreement must expressly release the

with the Court's permission because of a weather emergency.[8] *See* Docs. 29, 30, 32, 33; *see also* Doc. 10 (order appointing FMR to serve as the substitute custodian and prohibiting FMR from moving the M/V *Geysir* without an order).

The marshals service originally requested a deposit of $5,000 for the arrest of the M/V *Geysir* but "agreed to accept $2,500 because [FMR as] the substitute custodian would be present at the arrest of the vessel and the custody turned over immediately." Doc. 35 at 6–7. The marshals service represents that the charges for arresting the M/V *Geysir* are $262.93.

FMR effected public notice of the action and arrest on May 23, 2022, through a notice in the Florida Times Union.[9] Doc. 14. FMR filed proof of publication on May 31, 2022, with a sworn statement by a legal advertising representative of the Florida Times Union, the date of publication, and a copy of the actual publication. *Id.* at 3. The notice specified "any person having a claim against the vessel and/or property shall file a claim with the Court not later than fourteen days after process has been effected, and shall file an answer within twenty-one days from the date of filing their claim." *Id.* The

---

Marshal from all liability and responsibility for the care and custody of the property while in the hands of the substitute custodian and must expressly hold the Marshal harmless from all claims arising from the substitute custodianship." *Id.*; *see also* MDF 705. FMR provided consent and indemnification. *See* Doc. 3.

[8]"After the arrest or attachment of a vessel or property and except as provided in Section 5(k)(1), no person may … move a vessel without an order." Manual § 5(k)(2). FMR requested the Court's permission to move the M/V *Geysir* because the Coast Guard told FMR a move likely would be required. Doc. 29 at 1–3.

[9]At any stage of a case and on its own, a court may judicially notice a fact that cannot be reasonably disputed because it either is generally known or can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)–(d). The Court may judicially notice the Florida Times Union as the newspaper of largest circulation in Duval County, Florida, because that fact is generally known.

notice followed MDF 706—the manual's "Notice of Action in Rem and Arrest of Vessel" form. *Compare id.* at 3, *with* Manual App'x MDF 706.[10]

No one filed a verified statement of right or interest in the M/V *Geysir*, and the M/V *Geysir* never responded to the complaint.[11]

FMR moved for default under Federal Rule of Civil Procedure 55(a) and filed certified-mail receipts showing notice to "the known owner" of the M/V *Geysir* and "the only other entity that may claim a possessory interest in the" M/V *Geysir*.[12] Docs. 13, 15, 15-1, 15-2. FMR identified "Marco St. Croix Inc." at

---

[10]"If the property is not released within 14 days after execution [of process], the plaintiff must promptly—or within the time that the court allows—give public notice of the action and arrest in a newspaper designated by court order and having general circulation in the district[.]" Supp. Rule C(4). "The notice must be published within twenty-one days after execution of process." Manual § 3(c)(1). "The notice must be published at least once in an approved newspaper in the county where the vessel or property was located at the time of arrest[.]" *Id.* § 1(e). "An approved newspaper is a newspaper of general circulation. The newspaper of largest circulation in a county is presumed to be a newspaper of general circulation in that county." *Id.* "The plaintiff must file proof of publication not later than fourteen days after the last day of publication. Proof of publication must include the sworn statement by or on behalf of the publisher or editor, the dates of publication, and a copy of the actual publication." *Id.* § 3(c)(2). "The notice must specify the time … to file a statement of interest in or right against the seized property and to answer." Supp. Rule C(4). FMR complied with these requirements. *See* Doc. 14.

[11]"In an action in rem: (i) a person who asserts a right of possession or any ownership interest in the property that is the subject of the action must file a verified statement of right or interest: (A) within 14 days after the execution of process, or (B) within the time that the court allows[.]" Supp. Rule C(6)(a)(i); *see also* Manual § 3(e)(1). "[A] person who asserts a right of possession or any ownership interest must serve an answer within 21 days after filing the statement of interest or right." Supp. Rule C(6)(a)(iv); *see also* Manual § 3(e)(2). No right of possession or ownership interest in the M/V *Geysir* has been asserted, whether timely or otherwise.

[12]For an action in rem, "A party seeking the entry of default in rem must file a motion and legal memorandum" and proof of "[s]ervice on the master or other person having custody of the property"; "[d]elivery, or by certified mail return receipt requested (or the international equivalent), to every other person who is known to claim a possessory interest in the property"; and "[p]ublication as required … at least seven days

P.O. Box 5678, Christiansted, VI 00823, as the known owner of the M/V *Geysir* and "Green Shipping Line, Attn: Percy Pyne, IV, P.O. Box 8926, Red Bank, NJ 07701" as the only other known entity that may claim a possessory interest in the M/V *Geysir*. Docs. 13, 15-1, 15-2.

Within a week of the motion for default, lawyers for the M/V *Geysir* appeared. Docs. 16, 17. The undersigned directed the parties to confer in good faith and directed the M/V *Geysir*, absent a resolution, to respond to the motion for default and show cause why default should not be entered. Doc. 18.

A month later, FMR notified the Court the lawyers for the M/V *Geysir* had been instructed to withdraw and therefore took no position on the motion. Doc. 19. That day, the lawyers for the M/V *Geysir* moved to withdraw. Doc. 20. The undersigned granted the motion to withdraw and directed FMR to supplement the motion for default to explain why notice was proper.[13] Doc. 21. FMR supplemented the motion, Doc. 22, and on August 16, 2022, the clerk entered default, Doc. 23. The clerk mailed copies to the known owner of the M/V *Geysir* and the only other entity that may claim a possessory interest in

---

before the party seeking entry of default." Manual § 3(g)(1)(A)–(C). FMR complied with these requirements. *See* Docs. 13, 15, 15-1, 15-2.

[13]The undersigned observed the notice was published on May 23, 2022, the notice instructed any claimant to file a claim "not later than 14 days after process has been effected," and the M/V *Geysir* was arrested on May 6, 2022. Doc. 21 at 2. Because the time for filing of a claim appeared to have passed when the notice was published, the undersigned directed FMR to supplement the motion for default to explain why the notice was proper. Doc. 21 at 2. FMR responded that if process means arrest only, MDF 706 (the form notice used by FMR) and Supplemental Rule C(4) "create a paradox." Doc. 22 at 5. FMR continued that if process means both arrest of a vessel *and* notice to potential claimants, no paradox is created. *Id.* This Court need not decide the issue. As FMR explained, regardless, FMR used the required form for the notice, *see* Doc. 14 at 3, and no one filed a claim at any time. Doc. 22 at 6.

the M/V *Geysir*, as identified by FMR. *See* docket text entry between Docs. 23 and 24.[14]

Proceeding under Federal Rule of Civil Procedure 55(b), FMR filed the current motion for default judgment, a legal memorandum, and an affidavit of Mr. Johnston on August 24, 2022.[15] Doc. 24. FMR certified service on the known owner and only other entity that may claim a possessory interest in the M/V *Geysir*, as earlier identified by FMR, Doc. 24 at 5, and, through an order sent to the same entities, the undersigned directed the M/V *Geysir* to respond to the motion for default judgment by September 22, 2022, or the Court would treat the motion as unopposed,[16] Doc. 25.

New counsel appeared for the M/V *Geysir*, Doc. 26, and moved for more time to respond to the motion for default judgment, Doc. 27. The undersigned granted the motion and directed the M/V *Geysir* to respond to the motion by October 3, 2022. Doc. 32. The M/V *Geysir* never responded, and its current counsel has filed nothing more.

---

[14]"Upon review of the motion, memorandum, and other proof, the clerk, may, where appropriate, enter default. The clerk must serve notice of the entry of default on all parties." Manual § 3(g)(2). The clerk entered default at the undersigned's direction following the undersigned's review of the filings.

[15]Section 3(h) of the manual adds, "Neither sooner than seven days nor later than thirty days after the entry of default, the moving party must file a motion, a legal memorandum, and documents supporting the entry of default judgment." FMR complied with these requirements. *See* Doc. 23 (clerk's entry of default on August 16, 2022); Doc. 24 (motion for default judgment filed on August 24, 2022).

[16]"If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing." Fed. R. Civ. P. 55(b)(2). FMR complied with this requirement, *see* Doc. 24 at 5, and the undersigned sent additional notice for good measure, Doc. 25 at 2.

The undersigned scheduled an evidentiary hearing on the motion for default judgment, explaining FMR should be prepared to present testimony or other evidence to establish the lien amount, to establish the reasonableness of the requested custodian fees, to explain why publication costs are taxable, and to explain why the Court should award the entire marshal's deposit despite that the marshal had charged less for the arrest of the M/V *Geysir*. Doc. 34.

Before the hearing, FMR supplemented its motion to address those matters. Doc. 35. FMR asked the Court to judicially notice an order in which this Court in 2017 in the Jacksonville Division awarded custodial costs of $2,005.00 a day for a 210-foot vessel and an order in which this Court in 2016 in the Jacksonville Division awarded custodial costs of $702.00 a day for a 123-foot pleasure craft. Doc. 35 at 2 (citing *N. Fla. Shipyards, Inc. v. M/V Atlantis*, No. 3:17-cv-1273-MMH-MCR, 2018 WL 3357364 (M.D. Fla. May 21, 2018), *report and recommendation adopted*, 2018 WL 3327929 (M.D. Fla. July 6, 2018) and *Millennial Capital Mgmt., LLC v. M/Y Cloud Ten*, No. 3:16-cv-693-MMH-MCR, 2017 WL 3841845 (M.D. Fla. Aug. 1, 2017), *report and recommendation adopted*, 2017 WL 3840440 (M.D. Fla. Sept. 1, 2017)).[17]

The undersigned conducted the evidentiary hearing and admitted testimony of Mr. Johnston and other evidence.[18] Docs. 36; 36-1 to 36-4. Counsel for FMR did not appear. After the hearing, FMR further supplemented its

---

[17]Taking judicial notice of rulings in other judicial decisions is unnecessary but, in this report and recommendation, the undersigned considers the rulings in the cases cited by FMR.

[18]FMR has not ordered the transcript of the evidentiary hearing. Any references to testimony in this report and recommendation are based on the rough transcript.

motion for default judgment, Doc. 37, and filed a second affidavit of Mr. Johnston, Doc. 38.

On January 10, 2023, FMR moved for an interlocutory sale or a judicial sale of the M/V *Geysir*, explaining, "At this time, the costs of keeping the vessel have become 'excessive or disproportionate' to the value of the vessel. Additionally, despite having hired two attorneys to make appearances in this case, the Owner has not attempted to secure the release at any point the vessel has been in custody. The Owner has also not contacted Plaintiff to seek any kind of settlement or resolution." Doc. 39 at 3. FMR added, "Alternatively, should the Court grant Plaintiff's pending Motion for Default Judgment in the interim, Plaintiff will then move the Court for an Order directing the U.S. Marshal to conduct a judicial sale of the vessel pursuant to the Rules and move to allow Plaintiff to credit bid for the amount of its judgment at such judicial sale." Doc. 39 at 4.

The undersigned conducted a telephone hearing to address both motions, the "on the order of the owner" requirement for a maritime lien, and the effect of a lien amount alleged in the complaint different from the lien amount requested in the motion for default judgment.[19] Doc. 40 (order); Doc. 41 (minutes). Again, counsel for FMR did not appear.

---

[19]FMR has not ordered the transcript of the telephone hearing. Any references to statements at the hearing in this report and recommendation are based on the audio recording.

### III.  Law

### A.  *Subject-Matter Jurisdiction, In Rem Actions, and Maritime Liens*

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court thus has a "special obligation" to satisfy itself it has jurisdiction before proceeding to the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (quoted authority omitted).

The United States Constitution provides that the "judicial Power shall extend … to all Cases of admiralty and maritime Jurisdiction[.]" U.S. Const. art. III, § 2, cl. 2. Congress, in turn, vests in federal district courts "original" and "exclusive" jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction[.]" 28 U.S.C. § 1333(1).

"An in rem suit against a vessel is distinctively an admiralty proceeding, and is hence within the exclusive province of the federal courts." *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010) (internal alteration, italics, and quoted authority omitted). "Federal district courts obtain in rem jurisdiction over a vessel when a maritime lien attaches to it." *Id.* (italics omitted).

"A maritime lien is a special property right in a ship given to a creditor by law as security for a debt or claim, and it attaches the moment the debt arises." *Id.* (internal quotation marks and quoted authority omitted). "Maritime liens differ from other common law liens in that a maritime lien is not simply a security device to be foreclosed if the owner defaults; rather, a maritime lien converts the vessel itself into the obligor and allows injured parties to proceed against it directly." *Id.* (internal quotation marks and quoted

authority omitted). "This is called an in rem proceeding." *Id.* (italics omitted). Upon arrest of a vessel, the vessel "remains in the court's custody during the proceeding [and] serves as both the respondent and the subject matter." *Id.*

"The Federal Maritime Lien Act, 46 U.S.C. §§ 31341–31343, grants maritime liens to particular persons based on their relationship to, or service of, a vessel." *Id.* Under the Act, "a person providing necessaries to a [non-public] vessel on the order of the owner or a person authorized by the owner— (1) has a maritime lien on the vessel; (2) may bring a civil action in rem to enforce the lien; and (3) is not required to allege or prove in the action that credit was given to the vessel." 46 U.S.C. § 31342; *see also* Supp. R. C(1)(a) ("An action in rem may be brought … [t]o enforce any maritime lien[.]").

"The federal maritime lien is a unique security device, serving the dual purpose of keeping ships moving in commerce while not allowing them to escape their debts by sailing away." *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986). "A maritime lien gives to its holder a property right in a vessel, and the proceeding in rem is a means of enforcing the property right." *Crimson Yachts*, 603 F.3d at 868 (internal alteration and quoted authority omitted).

"A maritime lien cannot be executed or divested outside of an in rem proceeding." *Id.* (italics omitted). "When a vessel is sold by order of a district court in a civil action in rem brought to enforce … a maritime lien, any claim in the vessel existing on the date of sale is terminated, including a possessory common law lien …, and the vessel is sold free of all those claims." 46 U.S.C. § 31326(a).

"[M]aritime liens are governed by the principle of stricti juris and will not be extended by construction, analogy or inference." *Bradford Marine, Inc. v. M/V Sea Falcon*, 64 F.3d 585, 589 (11th Cir. 1995) (internal quotation marks and italics omitted). To establish a maritime lien in a vessel, a party must establish (1) the party provided goods or services to the vessel, (2) the goods or services qualify as "necessaries," (3) the party provided the goods or services to the vessel on the order of the vessel's owner or the owner's agent, and (4) the party provided the goods or services at a reasonable price. *Barcliff, LLC v. M/V Deep Blue*, 876 F.3d 1063, 1068 & n.5 (11th Cir. 2017).

By statute, "'necessaries' includes repairs, supplies, towage, and the use of a dry dock or marine railway[.]" 46 U.S.C. § 31301(4). This list is non-exhaustive, and "[t]he term has been liberally construed to include what is reasonably needed in the ship's business, such as goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function." *Bradford Marine*, 64 F.3d at 589 (cleaned up). Stated another way, "Necessaries are the things that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged." *Id.* (quoted authority omitted).

The Eleventh Circuit has held dockage services—which are akin to berthage services—constitute necessaries.[20] *City of Riviera Beach v. That Certain Unnamed Gray, Two Story Vessel Approximately Fifty-Seven Feet in*

---

[20]Dockage is "a charge or due levied against a vessel in cases where, in addition to harborage, the vessel makes use of the dock accommodation of a port for the purpose of taking in or discharging cargo." 1 Rene de Kerchove, International Maritime Dictionary, at 228 (2d ed. 1961). "The word 'berthage' is frequently used in place of 'dockage.'" *Id.* at 58. Berthage is "the space alongside a wharf or quay for the reception of shipping" and it has been "occasionally applied to the charges assessed against a ship … when there is no loading or unloading of cargo, the vessel being tied up for repairs, supplies, etc." *Id.*

*Length*, 649 F.3d 1259, 1270 (11th Cir. 2011), *rev'd on other grounds*, *Lozman v. City of Riviera Beach*, 568 U.S. 115, 131 (2013); *see also Am. E. Dev. Corp. v. Everglades Marina, Inc.*, 608 F.2d 123, 125 (5th Cir. 1979) (recognizing that "[s]everal courts have imposed maritime liens for docking, wharfage, or storage fees"); *Cove Invs., LLC v. Vessel - Cordelie*, No. 18-CV-03884-DMR, 2019 WL 343423, at *4 (N.D. Cal. Jan. 28, 2019) ("Berthing services are 'necessaries[.]'").

"The following persons are presumed to have authority to procure necessaries for a vessel: (1) the owner; (2) the master; (3) a person entrusted with the management of the vessel at the port of supply; or (4) an officer or agent appointed by—(A) the owner; (B) a charterer; (C) an owner pro hac vice; or (D) an agreed buyer in possession of the vessel." 46 U.S.C. § 31341(a). "[P]rior authorization by the owner to the party procuring the [necessaries] is not an essential requisite to preserving a lien position." *Marine Coatings of Ala., Inc. v. United States*, 932 F.2d 1370, 1376 (11th Cir. 1991) (emphasis omitted). "Instead, authorization, either actual or fairly presumed, given prior to or during performance of the services, or ratified subsequent to performance will suffice." *Id.*

The reasonableness of charges "in the maritime context … is measured by whether they are customary and in accord with prevailing charges for the work done and the materials furnished." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005) (internal quotation marks and citations omitted). "Accordingly, to satisfy the evidentiary burden on this element, a plaintiff must present some modicum of evidence which compares the charges claimed with what other competitors would have charged for similar work or materials." *Id.* "This burden may be satisfied by witness testimony that the charges were reasonably in accord with industry

15

standards." *Id.* "The failure to present such evidence, however, dictates that a plaintiff cannot prevail on its maritime claims." *Id.*

"The only object of the [action in rem] is to make the right to the maritime lien available—to carry it into effect. It subserves no other purpose." *Bradford Marine*, 64 F.3d at 589 (cleaned up). The maritime lien "is limited to the value of the lien itself." *Id.* The value of the lien is the amount owed for necessaries provided pre-arrest and is not dependent on issuing invoices. *Dresdner Bank AG v. M/V Olympia Voyager*, 465 F.3d 1267, 1276 (11th Cir. 2006); *see also Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co.*, 254 U.S. 1, 12–13 (1920) (explaining that a maritime lien arises immediately and secretly when necessaries are provided to the vessel).

## B.     *Arresting and Keeping a Vessel*

"The Marshal must initially take custody of any vessel … arrested[.]" Manual § 5(k)(1). The "party seeking the arrest … must deposit a sum with the Marshal sufficient to cover the Marshal's estimated fees and expenses of arresting and keeping the property for at least fourteen days. The Marshal does not have to execute process until the deposit is made." *Id.* § 5(f)(1); *see also* 28 U.S.C. § 1921(d) ("The … marshals may require a deposit to cover the fees and expenses[.]").

"Until such time as a substitute custodian may be authorized …, the Marshal must provide adequate and necessary security for the safekeeping of the vessel …. In the discretion of the Marshal, adequate and necessary security may include placing keepers on or near the vessel or the appointment of a facility or person to serve as a custodian of the vessel or property." Manual § 5(k)(1).

16

"Concurrent with the arrest … of a vessel …, the Marshal must obtain insurance to protect the Marshal, the deputies, the keepers, and the custodians from liability arising from the arrest or attachment." *Id.* § 5(k)(4)(A). "The insurance must protect any liability arising from performing services to protect the vessel[.]" *Id.* "The party applying for the arrest … of a vessel, cargo, or property must promptly reimburse the Marshal for paid insurance premiums." *Id.* § 5(k)(4)(B).

## C.   *Default Judgment*

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing[.]" *Id.* 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." *Id.* 55(b)(2). "The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *Id.*

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). "A default judgment

is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true." *Id.*

"The corollary of this rule, however, is that a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Id.* "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* "In short, … a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Id.*

Once liability is established, a court must ensure "there is a legitimate basis for any damage award it enters[.]" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

In an action in rem, "[t]he prevailing party cannot execute on a [default] judgment, and a custodian cannot release seized property, until fourteen days after the entry of the judgment or order of dismissal." Manual § 5(p)(1).

**D.    *Costs***

Federal Rule of Civil Procedure 54(d)(1) provides, "Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."

Rule 54(d)(1) codifies the "venerable presumption that prevailing parties are entitled to costs." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013).

The word "should" in the rule makes clear that "whether to award costs ultimately lies within the sound discretion of the district court." *Id.* If a court exercises its discretion to deny full costs, however, the court "must have and state a sound basis[.]" *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000) (en banc).

Rule 54(d)(1) works with 28 U.S.C. § 1920, under which a court may tax costs only if they fall within one of six categories. *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002). Evident from § 1920, costs are "limited to relatively minor, incidental expenses," and "almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (quoted authority omitted).

Section 1920 reflects congressional policy to place "rigid controls on cost-shifting in federal courts." *Parkes v. Hall*, 906 F.2d 658, 659 (11th Cir. 1990) (quoting *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444 (1987)). A court may decline to allow costs in § 1920 but may not allow costs outside of § 1920. *Crawford*, 482 U.S. at 442–43. "Items proposed by winning parties as costs should always be given careful scrutiny." *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964), *disapproved of on another ground by Crawford*, 482 U.S. at 442–43.

The only category in § 1920 pertinent here is "[f]ees of the clerk and marshal." *See* 28 U.S.C. § 1920(1) (quoted). Fees of the marshal are described in 28 U.S.C. § 1921. "'Fees of the … marshal' refers to fees authorized by § 1921, rather than fees collected by the marshal." *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000). Thus, for example, "a district court does not

abuse its discretion in taxing private process server fees that do not exceed the statutory fees authorized in § 1921." *Id.*

Section 1921 provides that marshals and deputy marshals must "routinely collect," and a court "may tax as costs," fees for serving a warrant, fees for "[t]he preparation of any notice of sale, proclamation in admiralty, or other public notice or bill of sale," and the "actual expenses" incurred in keeping a vessel, "such as storage, moving, boat hire, or other special transportation, watchmen's or keepers' fees, insurance, and an hourly rate, including overtime, for each deputy marshal required for special services, such as guarding, inventorying, and moving." 28 U.S.C. § 1921(a)(1)(A), (D), (E). The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions "do not alter the provisions of … §1921 … relative to the expenses of seizing and keeping property … arrested and to the requirement of deposits to cover such expenses." Supp. Rule E(4)(e).

Under § 1921, the Attorney General must "prescribe by regulation the fees to be taxed and collected" by marshals and deputy marshals, and the "fees shall, to the extent practicable, reflect the actual and reasonable cost of the service provided." 28 U.S.C. § 1921(b); *see also* 28 C.F.R. § 0.114 ("Fees for services").

The manual provides, "If costs are awarded to any party, all reasonable expenses paid by the prevailing party incidental to or arising from the arrest … of any vessel … must be taxed as costs." Manual § 5(o)(2). The manual further provides that a substitute custodian appointed by this Court may "incur expenses reasonably deemed necessary in maintaining the vessel, cargo, and property to prevent loss or undue deterioration." *Id*. § 5(l)(2). The manual

continues, "The premiums charged for … liability insurance will be taxed as an expense of custody." *Id.* § 5(k)(4)(C).

A claim arising out of the care of a vessel while the vessel is in the custody of a court is treated as a cost, not a lien. *Donald D. Forsht Assocs. v. Transamerica ICS, Inc.*, 821 F.2d 1556, 1560–62 (11th Cir. 1987).

## IV.   Analysis

In the motion for default judgment, FMR "requests the entry of a default judgment against M/V GEYSIR in the amount of $188,519.42 for unpaid berthing costs; $225,591.53 in substitute custodian expenses; and $3,403.93 in taxable costs." Doc. 24 at 4. FMR "also requests this Honorable Court reserve jurisdiction to consider a Motion for Judicial Sale of the vessel after the required fourteen days pursuant to Middle District Admiralty and Maritime Manual 5(p)(1)." *Id.*

In the affidavit accompanying the motion for default judgment, Mr. Johnston states:

> 3.     As of April 11, 2022, FMR was owed $122,425.00 on the outstanding invoices for berthing as referenced in the Verified Complaint through the date of filing the Complaint.
>
> 4.     [FMR] continued to berth the Defendant vessel from the date of filing the verified complaint until May 6, 2022, when the service of the warrant on the vessel was executed and [FMR] was appointed substitute custodian of the vessel by the Court. The total amount owed from January 8, 2022 through May 5, 2022 for berthing is $188,519.42, as set forth in the invoice attached [as] Exhibit A.
>
> 5.     Exhibit A is a true and correct copy of the invoice for berthing from January 8, 2022, through May 5, 2022.

21

> 6.     Additionally, [FMR] has acted as substitute custodian for this vessel since its arrest on May 6, 2022 pursuant to the Order of the Court. …
>
> 7.     [FMR] has incurred $225,591.53 in charges as the substitute custodian of the vessel as of August 24, 2022, and continues to accrue charges in the amount of $2,000 per day as substitute custodian.
>
> 8.     [FMR] engaged counsel to prosecute this action. Counsel has directly paid the costs associated with this vessel arrest. [FMR] is responsible for payment of costs to counsel in the total amount of $3,403.93, which includes the U.S. Marshal's $2,500.00 deposit, $402.00 in filing fees, and $501.93 for the required publication in the Florida Times Union.

Doc. 24-1 ¶¶ 3–8. The invoice includes storage fees and sales taxes not demanded in the original complaint. *Compare* Doc. 1 (complaint), *with* Doc. 24-1 at 5–6 (invoice). At the recent telephone hearing, FMR amended its requested lien amount to reflect the amount in the complaint, not the amount requested in the motion for default judgment. *See generally* Doc. 1; *see also* Fed. R. Civ. P. 54(c).

At the evidentiary hearing, Mr. Johnston testified about the following facts, which are uncontroverted.

Besides serving as FMR's Vice President, Mr. Johnston serves as the director of a local board of the Jacksonville Area Ship Repair Association and is familiar with reasonable and customary rates for berthing vessels. For a vessel at a wharf, the berthing rate is determined by linear foot. FMR's primary business is ship repair, but FMR also provides berthing services, usually for thirty days or less. When repairing a ship, FMR usually waives the berthing fee.

In January 2022, to further its business, FMR purchased assets from North Florida Shipyards and leased land from Commodores Point Properties. The M/V *Geysir* is a 295-linear-foot bulk-container ship. The M/V *Geysir* was berthed through North Florida Shipyards when FMR took over and had been there for years. The M/V *Geysir* was charged for berthing beginning in 2018. According to records of North Florida Shipyards, the berthing cost was $1,362 a day and later $1,952 a day, excluding items or services like electricity, portable water, and gangway installation and removal. The owner of the M/V *Geysir* paid North Florida Shipyards some amount for the berthing, essentially settling any outstanding debt owed to that company.

FMR sent the invoices included with the complaint to Green Line Shipping. The invoices are based on actual berthing costs before the arrest of the M/V *Geysir*, and, in Mr. Johnston's opinion, the amounts are reasonable. FMR cannot get the owner of the M/V *Geysir* to respond, though someone inadvertently acknowledged receipt of the invoices. Both FMR and Commodores Point Properties have an interest in the M/V *Geysir*'s removal from the property.

While serving as the substitute custodian of the M/V *Geysir* upon its arrest, FMR has had to pay terminal tariffs and a percentage of wharfage fees to Commodores Point Properties. FMR has insurance on the M/V *Geysir* and provides 24-hour security to the area. To move the M/V *Geysir* during the weather emergency, FMR had to rent tugs. Because the M/V *Geysir* has been berthed for longer than ninety-six hours, FMR had to file a report with the captain of the port on the vessel's behalf. FMR has lost and will continue to lose the opportunity to use the space the M/V *Geysir* occupies. In Mr. Johnston's opinion, the marshal would have charged more had he taken

custody of the M/V *Geysir*, and the amount FMR is requesting for custodian services is based on necessities and is reasonable. So far, FMR has been paid nothing to serve as the substitute custodian.

In a supplement to the motion for default judgment, FMR clarifies that the $2,000.00 a day FMR requested for custodial services is a rate based on a per diem, not on actual expenses, and states FMR will accept actual expenses— minus sales tax traditionally excluded and security provided regardless of the M/V *Geysir*'s presence—for its custodial services beginning on May 6, 2022 (the day of arrest). Doc. 37 at 5 & n.2. FMR states, "If the Court is in any way uncomfortable with the per diem as previously calculated, Plaintiff will agree to accept the judgment for the <u>actual</u> costs expended and will specifically waive any claim for any amounts related to undertaking the liability of the arrest." *Id.* at 5–6.

FMR provides Mr. Johnston's second affidavit, to which he attaches an invoice and receipts, to show actual expenses. *See generally* Doc. 38; Doc. 38-1 at 2–10. He states "[t]he attached invoice shows the actual custodial costs of [FMR] in the safekeeping of … M/V Geysir from May 6, 2022 through November 10, 2022" (four days before the affidavit was filed; a total of 188 days). Doc. 38 ¶ 3. The invoice shows charges for "Wharfage Fees" of $278,755.00 (based on a rate of $1,475.00 a day), "Inside Storage" fees of $5,832.58, "Outside Storage" fees of $1,166.52, labor relocation costs of $1,242.50, non-labor relocation costs of $14,438.35 (supported by third-party invoices with an unexplained 15-percent mark-up), and insurance costs of $9,509.80 and $10,275.00. Doc. 38-1.

Because the M/V *Geysir* failed to respond to the motion for default judgment, the motion is treated as unopposed. *See* Doc. 25 (order informing the M/V *Geysir* that it must respond to the motion or the Court would treat the motion as unopposed).

The entry of default judgment for FMR and against the M/V *Geysir* is warranted. In the complaint, FMR alleges it provided berthing services to the M/V *Geysir*, *see* Doc. 1 ¶ 5; "on order of the [the M/V *Geysir*'s] owner," *see id.*; but "the charges [for the berthing services] have not been paid," *see id.* ¶ 7. These allegations, with the invoices attached to the complaint and an assumption the berthing charges were reasonable (later proven with Mr. Johnston's testimony), establish a maritime lien and this Court's jurisdiction.[21] *See Barcliff*, 876 F.3d at 1068 & n.5 (stating the elements for a maritime lien); *City of Riviera Beach*, 649 F.3d at 1270 (holding that dockage services are necessaries).

The lien is $1,475.00 a day, from January 7, 2022 (the first day of berthing services by FMR after the 7-day grace period FMR provided, *see* Doc. 1-1 at 2), to May 5, 2022 (the day before the arrest of the M/V *Geysir*, *see* Doc. 12), which is 118 days, which equates to $174,050.00.[22]

---

[21]The statement in the complaint "on order of the [M/V *Geysir*'s] owner," *see id.* ¶ 5, repeats language from the Federal Maritime Lien Act, *see* 46 U.S.C. § 31342(a), and standing alone is arguably a legal conclusion, not a factual allegation admitted through default. But considered with the complaint's exhibits—the letters and invoices for berthing services sent to the presumed agent of the owner—the statement may be considered factual in nature.

[22]Including in the lien the per diem amount for berthing services after the complaint and before the arrest does not run afoul of the prohibition that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," *see* Fed. R. Civ. P. 54(c), because FMR included in the complaint the allegation that the "berthing costs continue at a rate of $1,475.00," Doc. 1 ¶ 6.

Of the $3,403.93 FMR requests for costs, FMR is entitled to the $402.00 FMR paid to file this action as "Fees of the clerk[.]" *See* 28 U.S.C. § 1920(1) (quoted); text entry for Doc. 1 (showing FMR made a $402.00 payment to bring this action).

FMR also is entitled to the $262.93 charged by the marshal for the arrest of the M/V *Geysir* as "Fees of the … marshal." *See* 28 U.S.C. §§ 1920(1), 1921(a)(1)(A). FMR is not entitled to the remainder of its deposit—collected by the marshal for the arrest of the M/V *Geysir*—because the marshal did not spend it, and FMR can request its return. Any amount the marshal will require as a deposit or spend for the anticipated sale of the M/V *Geysir* has yet to be determined.[23]

FMR is not entitled to the $501.93 for the publication in the Florida Times Union because FMR fails to show this is an expense described as "Fees of the … marshal" or any other cost category. Section 1921 permits fees for "*the preparation of* any notice of sale, proclamation in admiralty, or other public notice or bill of sale," 28 U.S.C. § 1921(a) (emphasis added), but FMR fails to show the amount requested was for the *preparation of* the public notice. This Court must give "preparation of" its ordinary meaning. *See Taniguchi*, 566 U.S.

---

[23]Where a party has deposited money with the marshal to cover the marshal's expenses but the marshal has not spent the entire deposit at the time of the judgment, courts addressing the issue have limited recovery to actual fees incurred. *See, e.g.*, *M&M Priv. Lending Grp., LLC v. M/Y Ciao Bella*, No. 19-CV-62350, 2020 WL 5499102, at *4 (S.D. Fla. Sept. 3, 2020); *Marina Resorts, LLC v. S/V "ARGO,"* No. 15-60149-CIV-COHN/SELTZER, 2015 WL 12803702, at *1 (S.D. Fla. May 12, 2015). Other courts have permitted full recovery of the deposit. *See, e.g.*, *Millennial Cap. Mgmt., LLC v. M/Y Cloud Ten*, No. 3:16-cv-693-J-MMH-MCR, 2017 WL 3841845, at *5 (M.D. Fla. Aug. 1, 2017), *report and recommendation adopted*, 2017 WL 3840440 (M.D. Fla. Sept. 1, 2017). Those cases are without persuasive value because they include no discussion of whether the deposit had been spent.

at 573 (rejecting a broad meaning of "interpreter" in § 1920 and explaining that "[b]ecause taxable costs are limited by statute and are modest in scope, we see no compelling reason to stretch the ordinary meaning of the cost items Congress authorized in § 1920.").[24] Although the manual provides that "all reasonable expenses paid by the prevailing party incidental to or arising from the arrest … of any vessel, property, and cargo must be taxed as costs," *see* Manual § 5(o)(2), the notice is incident to the action itself, not to the arrest, and, moreover, the Manual cannot conflict with § 1921. *See* Fed. R. Civ. P. 83(a)(1) ("A local rule must be consistent with—but not duplicate—federal statutes[.]").

FMR is entitled to expenses incurred as the substitute custodian as "Fees of the … marshal." *See* 28 U.S.C. §§ 1920(1) (quoted), 1921(a)(1)(E); Manual §§ 5(l)(2), 5(k)(4)(C). Considering Mr. Johnston's testimony at the evidentiary hearing; his second affidavit, Doc. 38; the invoices with the affidavit, Doc. 38-1 at 2–10; FMR's concession it is willing to accept actual costs, Doc. 37 at 5–6; and the per diem amounts awarded in the cases FMR asks the Court to consider, Doc. 35 at 2, a reasonable substitute custodian fee is $1,512.23 a day.

This amount considers the requested "Wharfage Fees" of $1,475.00 a day. *See* Doc. 38-1 at 3. This amount also considers the requested "Inside Storage" and "Outside Storage" fees of $37.23 a day. *See* Doc. 38-1 at 3; *see also* Doc. 1-1 at 5 (letter to M/V *Geysir*'s agent explaining the charge of "$1.50/sq.

---

[24]District courts—including this Court—have taxed costs for publishing a notice of an action in rem. *See, e.g.*, *Robbie's of Key W. v. M/V Komedy III*, No. 4:19-CV-10193-KMM, 2020 WL 13389894, at *4 (S.D. Fla. Nov. 4, 2020); *Millennial Cap. Mgmt*, 2017 WL 3841845, at *6 (citing *Bank of Am., N.A. v. M/V Triple Threat*, No. 3:13-cv-592-J-39JBT (M.D. Fla. July 11, 2014)); *Sykes v. M/V Osprey*, No. 08-80407-CIV, 2009 WL 3446734 (S.D. Fla. Oct. 20, 2009). Those cases are without persuasive value because they include no analysis of the meaning or requirement of "preparation" in § 1921(a)(1)(D).

ft./month for inside storage and $0.50/sq. ft./month for outside storage"). Although FMR does not explain what was stored, the undersigned presumes FMR was storing M/V *Geysir*'s "tackle, apparel and furniture" over which FMR was appointed substitute custodian. *See* Doc. 10 at 1.

As part of its substitute-custodian expenses, FMR also is entitled to the $19,784.80 FMR spent to insure the M/V *Geysir*. Although the insurance is through June 2023, taxing the entire amount is appropriate because the cost has been incurred and buying annual insurance appears to have been less expensive than buying month-by-month insurance. *Compare* Doc. 38-1 at 9 (invoice of $11,188.00 for insurance from April 25 to June 30, 2022), *with id.* at 10 (invoice of $10,275.00 for insurance from June 30, 2022, to June 30, 2023).

As part of its substitute-custodian expenses, FMR also is entitled to the $13,797.59 FMR spent to move the M/V *Geysir* during the weather emergency.[25] *See* Doc. 38-1 at 4–10; 28 U.S.C. § 1921(a)(1)(E). FMR has not shown it is entitled to the 15% mark-up shown on the invoices because FMR does not explain the purpose of the mark-up, and the purpose is unclear. (FMR separately charged for its labor in moving the M/V *Geysir*. *See generally* Doc. 38-1 at 3, 4.)

Thus, default judgment is warranted for $174,050.00 (the amount of the lien), and costs of $402.00 (the filing fee), $262.93 (the amount to arrest the M/V *Geysir*), $33,582.39 (the insurance and moving costs incurred while

---

[25]An invoice FMR submits for relocating the M/V *Geysir* references moving another vessel, the "M/V Bow Triumph." Doc. 38-1 at 6. Because Mr. Johnston swears in his affidavit the charge is an "actual custodial cost[]" of FMR "in the safekeeping of the vessel M/V Geysir[,]" Doc. 38 ¶ 3, the undersigned presumes moving the M/V *Bow Triumph* was necessary to move the M/V *Geysir*. If this presumption is incorrect, Mr. Johnston must promptly amend his affidavit and explain why the full amount of the invoice was included as an actual custodial cost associated with the M/V *Geysir*.

serving as the substitute custodian), and $1,512.23 a day from May 6, 2022, to the date of entry of judgment (the substitute custodian fee).

Granting the motion for default judgment will moot the motion for an interim sale, Doc. 39, as FMR recognizes, *id.* at 4.

## V.    Recommendations

The undersigned **recommends** entering an order:

1.    **granting in part** the motion for default judgment, Doc. 24;

2.    **denying as moot** the motion for an interim sale of the M/V *Geysir*, Doc. 39;

3.    **directing** the clerk to enter judgment for FMR and against the M/V *Geysir* for:

    (a)    $174,050.00 for berthing from January 7 to May 5, 2022;

    (b)    $664.93 for costs relating to the filing fee and the arrest of the M/V *Geysir*;

    (c)    $33,582.39 for substitute-custodian expenses; and

    (d)    $1,512.23 a day from May 6, 2022, to the date of entry of judgment for substitute-custodian services; and

4.    **reserving jurisdiction** to consider a motion for judicial sale of the M/V *Geysir* and **directing** FMR to file an appropriate motion at least fourteen but no more than forty-five days after entry of the judgment.

"Within 14 days after being served with a copy of [a report and recommendation], a party may serve and file specific written objections to [any]

29

proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id*. A party's failure to serve and file specific objections to the proposed findings and recommendations alters review by the district judge and the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

**Entered** in Jacksonville, Florida, on February 4, 2023.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

Copies to:

The Honorable Timothy Corrigan

Counsel of Record

Marco St. Croix Inc.
P.O. Box 5678
Christiansted, VI 00823

Green Shipping Line
Attn: Percy Pyne, IV
P.O. Box 8926
Red Bank, NJ 07701